Good morning, Your Honors. If it pleases the Court, Edith Binet here representing Naomi Walton, the plaintiff and appellant in this case. Ms. Walton was a court security officer for the Northern District of California for over 14 years. She had an unblemished record. She had been promoted to lead court security officer after only seven years, and she was summarily terminated in August of 2002 on the basis of a misreading of audiological test results without ever speaking to her directly or doing any really individualized review. This case was dismissed by the district court on the defendant's motion for summary judgment. The court dismissed the claim of record of disability. Ms. Binet, this is, of course, a case involving statutory construction. Your client situation we can all empathize with. I think the court today is called upon to construe a statute, actually more than one statute, and we're going to need your help to walk through this in terms of the record. And I'd like to start by asking you the following. Is there any evidence in the record that the inability to localize sound is, in fact, a substantial limitation on the major life activity of hearing, considering the mitigating factors of head movement and visual localization shown in the Cook report? To begin with, Your Honor, this is a regarded as disabled case, and I don't believe mitigating factors apply to a regarded as disabled case. In Sutton v. United Airlines, you may recall, Your Honor, that the court found that the plaintiffs were not disabled because of the mitigating factor of wearing glasses, and yet then went right on to the regarded as disabled aspect of the case. But even in the regarded as format, you really, do you not have to show specific, let me just say, do you not actually have to show some evidence of actual disability, not only just regarded as, but in fact be disabled in the category? I'm not sure what you mean about evidence of being disabled in the category of regarded as. Employer regards and that you are, in fact, regarded as being disabled, and I'm referring specifically to the Thornton case. With respect to whether the employer regarded her as disabled, the employer, the medical review officer who recommended her termination, evaluated her as unable to localize sound, having an inability to detect where sound comes from. That was not an offhand remark. He repeated it again in a declaration he filed in this litigation, that she is unable to localize sound. With respect to what that means, aside from a simple common sense of what it would mean to not be able to see, or not be able to hear where sound was coming from, we introduced the report of Dr. Cook, who described the various life's activities that are dependent on sound localization. She spoke of hearing sounds of interest, hearing traffic noises, hearing a child cry, knowing that someone is speaking in the other room. In fact, looking at a group of people and not knowing which one is speaking, because you can't tell from what side the voice is coming. Now, Dr. Are you raising this localizing sound as a major life activity for the first time on appeal? No, I did raise it in the district court, Your Honor, the motion for summary. The order granting summary judgment did not address it, but I did raise that I submitted the Head v. Glacier case to the court when it came out and submitted a supplemental argument about localizing sound being a major life activity in itself, in light of the fact that Head v. Glacier decided that reading is a major life activity. This was in your response to the motion for summary judgment? It was subsequent to my response. It was a supplemental response, Your Honor. The court did not address it, although it did say in the beginning of the order that it had received my supplemental responses. I submitted two supplemental papers in response to the motion for summary judgment. Dr. Cook was describing the kinds of things, life activities, that are dependent on the ability to localize sound, and she said that having difficulty localizing sound can be inconvenient and even dangerous. On the motion for summary judgment, I believe the plaintiff is entitled to the reasonable inference that being unable to localize sound would be more than inconvenient and more dangerous than just having a difficulty in localizing sound. The fact that the medical review officer and, in fact, the entire hearing standard interprets a certain level of hearing impairment as being unable to localize sound and that Ms. Walton individually is unable to localize sound represents a significant impairment in the daily life activity of hearing, as well as, I believe, localizing sound being a major life activity in itself. Which prong of Sutton are you trying to come under? Ms. Walton does not agree that she is unable to localize sound. We are alleging that she is regarded as disabled. They have a mistaken belief that she has a disabling disability. She has an impairment, and they are interpreting it as being more extreme than it is. She does have some hearing impairment in one of her ears. She does have some difference in her, it's what's called unilateral hearing impairment, and that is what causes difficulty in localizing sound, according to the experts. If you are not hearing sound in each ear at the same time, then you will have some difficulty localizing sound, even though Dr. Chilton, the medical review officer who reviewed her medical exams, concluded that she has only one functioning ear. That was incorrect. Okay. Now, are you challenging the base requirement of the service, the marshal's service, that there be ability to hear from both ears and be able to localize sound? The essential job requirement, Your Honor, is the ability to detect where sound is coming from. Right. So if they were correct that she couldn't meet that standard, then you wouldn't be here. If they were correct that she could not localize sound, we would not be here. That is right. What you're saying is that she came up short on a, in their view, on a test, which you are characterizing revealed some hearing impairment, but that did not rise to the level of disqualification under the rule. It did not rise to the level of being unable to localize sound. Yes. At the same time, CSOs are permitted to use hearing aids if they pass all the rest of the audiological tests. And the audiological expert who was purportedly the expert who participated in designing this program, even though subsequently it was disclosed she was not consulted on the design of this program for CSOs, Dr. Cook, who is the defendant's own subject matter expert, has testified that using a hearing aid will always disrupt the ability to localize sound. Similarly, wearing radios in one ear, plugged into one ear, will always disrupt the ability to localize sound. Disruption of the ability to localize sound is not a disqualifying effect. In other words, you can still localize sound even though your ability is somewhat disrupted. She said that reverberant environments composed of hard surfaces and high ceilings will disrupt the ability to localize sound. CSOs work with disrupted ability to localize sound all the time. There is no standard which actually establishes the inability to localize sound. And to assume that Ms. Walton was unable to localize sound, either because of a review of her medical results, her audiological testing results, or because of the standard of no more than 25 decibels difference between the right and left ears, neither standard will actually cause one to be unable to localize sound. Mr. Knight, just to shift a little bit because we've got a lot of statutes to cover here, Dr. Chilton's characterization, we'll assume for a moment, reflects the Marshal Service's beliefs. But can you point me to any, and I'm quoting from the statute, specific evidence about relevant labor markets or an identification of the problematic requirements posed by, in quotes, working in weapons-carrying law enforcement? This then goes to the issue of whether she is disabled in the major life activity of working. Correct. Your Honor, what I submitted or what I relied on and what the court accepted as evidence that she is, that the Marshal Service regards Ms. Walton as being unable to perform as a weapons-carrying law enforcement officer, were the Marshal Service's own experts' testimony and reports about difficulties in localizing sound using hearing aids being a bar from all law enforcement, weapons-carrying law enforcement. However, and that was the basis on which the district court accepted that they do regard her as being disabled with respect to weapons-carrying law enforcement. However, court security officers are in a different category. They don't work outside except in the perimeter of the buildings, and more importantly, they are permitted to use hearing aids. Are you saying that the labor market is a much narrower market than what was discussed below? It's actually a much broader market. It covers all federal law enforcement, all state law enforcement, all local law enforcement, all private law enforcement. It's an entire class of any form of public or private law enforcement that carries a gun. Are you saying that your client is or is not or would not be perceived in that broad market as being impaired? I'm saying that the Marshal Service perceives her as impaired in that broad market. It depends on you. What evidence is there of that? The two experts, the Marshal Service's own experts who reported or testified. Is it Chelton you're talking about? No. Dr. Chelton is not an expert. He is not an audiologist. He is a medical review officer who has had at the time no audiological training and did not consult with an audiologist. Who are you referring to? The experts are Dr. Lynn Cook, who is the Marshal Service subject matter expert, and Dr. Mark Kramer, who is the Marshal Service litigation expert for purposes of this litigation. And you're saying that their testimony was that in the broader law enforcement category that they believed that she was impaired in that area. They did not speak specifically of Ms. Walton. They both said that in the broader category of law enforcement, law enforcement officers should not be permitted to use hearing aids, and localization is an issue. For instance, Ms. Cook wrote the auditory standards for the Customs Service that Dr. Miller, who designed the plan for CSO, used as a blueprint. The Customs Service, according to her report, which is in the record, is out there in boats and planes and all-terrain vehicles. Police officers are on the street doing patrols. Recreational, you know, people, park rangers, people like that, are outside and that they should not be working if they have certain limitations to their abilities to localize sound. And from your perspective, the only way for your client's case to be properly heard, it needs to go back for trial to individualize it to her. Is that correct? I believe, Your Honor, that it has been established that she is perceived by the Marshals Service as being disabled with respect to any law enforcement other than being a CSO, and that the problem here is whether law enforcement in its very many broad categories is a class of job or probably not a broad variety of jobs. But the court below concluded that although she is regarded as not being able to perform law enforcement, weapons-carrying law enforcement, the court concluded that weapons-carrying law enforcement is not a class of jobs and suggested instead that being a dispatcher or an investigator are also law enforcement jobs and Ms. Walton is not necessarily precluded from performing those jobs. Our position is there's no evidence of Ms. Walton having any training or experience or skills as a dispatcher or an investigator. She's been a weapons-carrying, active-duty law enforcement officer for 14 years. She went to the San Francisco Police Academy. Just because a dispatcher is considered something that is part of law enforcement doesn't meet the statutory requirement of what an average person with the same training, skills, and abilities would be able to do, would be precluded from doing, or would be able to do if they did not have, if they were not perceived as being disabled the way Ms. Walton is. Do you want to save some of your time? I do, and I'll just make this one further point, Your Honor, that the most recent decision in 2005 in the EEOC v. UPS case says specifically disabled from or defines disabled from working as being disabled from the job skills of the job the person previously held. Thank you. I will reserve a few more minutes. Good morning. May it please the Court. Eric Fleisig, Green, with the Justice Department, representing Federal Appellee. I want to begin by addressing a couple of matters of law that I think have gotten slightly confused. First, there's a suggestion that mitigating factors are not considered in a regarded as disability claim. That is simply false. This Court's decision in EEOC v. UPS, that's 306 F. 3rd. 794, was regarded as a disability claim in the field of vision. The Court did consider mitigating factors in that circumstance. And as Judge Smith's question suggests, here, the mitigating factors are sufficient to take this case out of a disability context. The standard for being disabled in a major life activity, particularly here the life activity of hearing, this Court has stated that an individual plaintiff must show that she is prevented or severely restricted from the major life activity here, hearing, as a whole. And we submit the evidence here is wholly inadequate to show that. There are only two pieces of evidence that plaintiff relies on at all. One is the Sweeto Report, which, for the reasons discussed in our brief, is conclusory and without evidentiary value. That report consists of a purported expert, who was never qualified as an expert, stating here is the standard, here is what the marshal's service said, therefore the marshal's service's statement meets the standard. There's no explanation of why that is the case. There's no consideration that the law requires of the mitigating circumstances. And that report, we would submit, is without any value to Ms. Walton. The other piece of evidence is Dr. Cook's report, which counsel for Ms. Walton referenced earlier. That report states that difficulty in localizing sound is at most an inconvenience and occasionally is dangerous to an individual. But that's true of all impairments. That doesn't help Ms. Walton to show this is an impairment that is substantially limiting on a major life activity. The fact is that, again, as Judge Smith suggested, Dr. Cook testified that one can compensate for a lack of auditory localization by both source familiarity, if I hear a telephone ringing, I don't need to hear precisely where that ring is coming from. I know in my house where the telephone is. I hear the doorbell ring. I know where the doorbell is. And through visual localization, at least within my field of vision here, I can tell which one of you is speaking to me simply because one of your sets of lips is moving, whereas the other two of you presumably will not be talking at the same time. Don't always count on that. There you go. In rapid succession, but not at the same time. That was a good one.  I would ask that the honors not consider that as evidence. No. So the only two pieces of evidence here cut against precisely the standard that Ms. Walton must show on appeal, which is that she is prevented or severely restricted from ordinary hearing given the compensating availabilities such as visual localization or source-queued familiarity. Mr. Green, in the head, the Ninth Circuit held that reading is a major life activity because it is, in quotes, necessary in many instances to perform some of the major life activities enumerated in EEOC regulations. Under that standard, why would localizing sound, which is necessary in many instances to perform the major life activity of hearing, not be a major life activity? Well, Your Honor, for at least two reasons. First of all, there is — so, again, the question is where is that evidence coming from? Dr. Sweeto didn't address the major life activity of localization at all, and the only place that plaintiffs can draw any inferences from is Dr. Cook's report. And what Dr. Cook says is it is inconvenient to have difficulty in localizing sound precisely because one can compensate for it in other ways. That — I mean, whether or not hearing in this case — I mean, hearing is a major life activity, but localization, we contend, is not. That's a subset of precise sort of hearing. And for the same reasons that I've articulated, that it doesn't substantially impair hearing, it is also not itself a major life activity. I will note that while Plaintiff's counsel did sighthead in her motion for reconsideration, there is no argument there that localization is a major life activity. I would urge the Court to go back and look at that brief because there is not a scintilla of argument to that regard. With regard to the final major life activity here, which is working, I'll note at the outset that it's not clear that, particularly in a regarded as a civility claim, working even qualifies as a major life activity.  But even assuming that that is a major life activity, the only evidence that's pointed to here is about, as the district court characterized it, active weapons-carrying law enforcement. And to be clear, again, if you go and look at the district court's opinion and reference back the two pieces of evidence it cites, because they're not cited in Ms. Walton's brief, the citation is at Excerpts of Records, tab 63, page 544. Those two pieces of evidence are generalizations about public safety jobs. There is no specific reference to Ms. Walton whatsoever. And as plaintiff points out consistently in her brief, there is a requirement that there be an individualized assessment in order to give rise to a finding of regarded as disability. But even assuming that this is a sufficiently individualized assessment, a number of courts of appeals have stated that active weapons-carrying law enforcement is simply not a broad enough class of jobs to qualify as working as the statute would require. The Second Circuit- Let me respond to her point that this is a woman who's worked for 14 years doing this. She's trained for doing this. She went to the police department, police academy in San Francisco. How do you translate that into, well, you can do something else, but you can't do that anymore? Well, the Supreme Court has said, and this is from Sutton, if jobs utilizing an individual's skills, but maybe not her unique talents, are available, then one is not impaired in the major life activity of working. We would contend that- Sutton would be your answer to that. That's correct. I mean, an individual is not entitled to work in the job they're best suited to, as long as their talents are utilized. And in fact, the courts of appeals that have dealt with this question have considered individuals who have police officer and police officer training. And so there's no distinction between those cases, which include the Second Circuit's case, the Eleventh Circuit's case, and the Fourth Circuit's case. There's no distinction between those cases and Ms. Walton's case. And in fact, Ms. Walton draws no convincing distinction between those. She states they are relevant to police officers, but that is true and precisely why they are applicable here. So those are the three major life activities that are alleged that Ms. Walton is regarded as disabled in. If she can't prove she's regarded as disabled in any of those three major life activities, she can't qualify for protection under the Rehabilitation Act. And therefore, both her facial challenge to the medical guidelines and her particularized challenge in her instance cannot prevail. I will note, just in reference to the 28J letter, that Bates v. UPS did state that in a facial challenge, the otherwise qualified defense is not incorporated in the same way as under a usual Rehabilitation Act claim. So to the extent our brief relies on that particular prong, we think that after Bates that's no longer a viable ground for us, because Bates states that it must be an independent essential job qualification. And here, the job qualification she's challenging is the hearing and localization, and the job qualification that we contend she essentially lacks is hearing and localization. The record of impairment claim falls for the same reasons. Again, she needs to make out that she is an individual with a disability. I mean, the two essentially collapse. Even if you assume that this is a record of impairment case, which we would suggest that the First Circuit has already held, as the conference report the First Circuit cites makes clear, this is not such a case. And likewise, there's an issue about entitlement to accommodation. Kaplan forecloses that in a regarded-as claim. But even if it did not, even to be entitled for accommodation under 12.112b-5, one still needs to prove that one is an individual with a disability, which goes back to those three major life activities that Ms. Walton has failed to prove that she is regarded as disabled in. Unless there are any further questions. Thank you. Thank you, Your Honor. Initially, Your Honor, I'd like to point out that the EEOC versus UPS decision does not find mitigating standards for being regarded as disabled. In that case, the Court found that there was no evidence that the plaintiffs were disabled because they were able to function despite their disabilities. So then the Court moved to regarded-as disabled. I think you have to go back to the Sutton decision and see that after finding that the plaintiffs were not disabled because of their mitigating circumstances, the Court went right on to discuss regarded-as disabled. Furthermore, being able to move your head or visualize does not mitigate not being able, being unable to localize sound. If you're looking at your shoes, you cannot see traffic. You don't know where sounds are coming from if you are unable to localize. Dr. Cook was talking about having difficulty localizing, which is substantially different from what the marshal service believed for Ms. Walton. They said she is unable to localize. And remember, CSOs are permitted to work with disrupted localization all the time. The reason they fired her is because they concluded she is unable to localize, and you can't just mitigate visually or by moving your head when you have no idea where sounds are coming from. If you're not looking at someone, if you don't know where to move your head, you're not going to be able to mitigate being unable to localize. Dr. Sweeto, by the way, is the head of the audiology department at the University of California Medical School in San Francisco. And that's obvious in his report. He is one of the top audiologists in the country. When he says that being unable to localize sound is a significant impairment on the daily life activity of working, I'm sorry, of hearing, he knows what he's talking about. He's one of the country's experts on localization. Dr. Miller, who wrote these standards, is not an audiologist, has no audiological training, never consulted an audiologist. Dr. Chelton, who drew this conclusion about Ms. Walton, is not an audiologist, has no audiological training, never consulted an audiologist. With respect to reading as a major life activity, I did not bring this up in my motion for reconsideration. I mentioned it, but the brief that I presented to the court was in a supplement, I'm sorry, it's actually based on reading as a major life activity, the argument that being unable to localize sound is also a major life activity.  This is the head argument we were talking about? Yes, that's the head argument. It was in a supplemental brief filed before the court ruled on the defendant's motion for summary judgment. When Sutton said that being disabled from working did not fit those plaintiffs, the court was talking about being a global pilot and concluded that those plaintiffs could have been other kinds of pilots. The court did not conclude that they could be baggage handlers or flight attendants just because that happens to be related to the aviation industry. What you're looking at, what the Supreme Court looked at, what the Ninth Circuit has looked at is the kind of work that the plaintiff has been doing. And, in fact, the Ninth Circuit, although it's dicta, in the second EEOC versus UPS decision, very specifically said, prevented from, I'm sorry, I'm not using exactly the right words because I'm rushing to meet my time here, but it specifically referred back to the job from which the plaintiff was excluded, disqualified. And that's the kind of work that is considered in whether an individual is disabled in the major life activity of working. I think we're about done. Do you have one more thing? Just one thing about the facial challenge, Your Honor, and that is that in this case we have people who are being terminated for allegedly being unable to localize sound without any specific testing as to what degree they are impaired in their localization. And, at the same time, we have people who are working with acknowledged disrupted ability to localize sound. Again, with no testing as to how, to what extent that hearing is disrupted. And that is a facially discriminatory plan. That is a facially discriminatory qualifying requirement. Thank you, Your Honor. Thank you. Counsel, we appreciate the excellent arguments, and the case argued is submitted.
judges: Goodwin, O'scannlain, Fisher